United States District Court
For the Northern District of California

**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BENQ AMERICA CORPORATION,

    Plaintiff,

    v.

FORWARD ELECTRONICS CO., LTD., et al.,

    Defendants.
_____/

No. C 05-2409 PJH

**ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

    The motion of defendant Forward Electronics Co., Ltd., to dismiss for lack of personal jurisdiction or for improper venue came on for hearing before this court on November 30, 2005. Plaintiff appeared by its counsel Brian C. Rocca, and defendant appeared by its counsel Joseph S. Wu and Craig Pinedo. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion as follows and for the reasons stated at the hearing.

## BACKGROUND

    This is an action alleging breach of warranty and seeking indemnity and declaratory relief. Plaintiff BenQ America Corporation ("BenQ" America) is a California corporation. Defendant Forward Electronics Co., Ltd. ("Forward") is a Taiwanese corporation, with its principal place of business in Taiwan. BenQ America's parent corporation, BenQ

Corporation ("BenQ Corp." – not a party to this action), is also a Taiwanese corporation. BenQ Corp. purchased electronic components (the "tuners") from Forward in Taiwan. Those components, which contain integrated circuit chips, were incorporated into products such as televisions and color monitors that were then imported into the United States for sale by BenQ America. On February 24, 2005, Thomson Licensing S.A. ("Thomson") filed a complaint with the U.S. International Trade Commission ("ITC") against BenQ,[1] alleging that BenQ had infringed five of Thompson's patents. One of those patents involves the integrated circuit chips that Forward incorporated into its tuners.

On March 9, 2005, Thomson filed a patent infringement suit in this district against BenQ Corp., BenQ America, BenQ Optronics (Suzhou) Co. Ltd, and Au Optronics Corporation (case No. C-05-1005 (JSW)). The patent infringement suit was reportedly based on the same allegations and patents as the ITC investigation action. The parties requested a stay of the infringement action pursuant to 28 U.S.C. § 1659(a) (civil action involving parties that are also parties to proceeding before ITC may be stayed), and the request was granted on May 4, 2005. The parties apparently reached an agreement to settle the dispute before the ITC, and on December 8, 2005, they filed a stipulated notice of dismissal of the patent infringement suit.

Meanwhile, on June 4, 2005, BenQ America filed the present action. In the complaint, BenQ America alleges that in a June 10, 2003, contract, BenQ Corp. and Forward agreed that Forward would defend BenQ Corp. against any claims of infringement connected with products furnished by Forward, and would indemnify BenQ Corp. for any damages and costs awarded in any litigation resulting from any such claim, provided that BenQ Corp. notified Forward in writing within 30 days of the pendency of any such claim. BenQ America alleges (on information and belief) that Forward was aware that BenQ America is a wholly owned subsidiary to BenQ Corp.; that BenQ Corp. sells its products through BenQ America in California; that the June 10, 2003, contract indemnifies BenQ, which includes BenQ

---

[1] It is not clear which BenQ entities are involved in the ITC action.

corporation and its subsidiaries, including BenQ America; and that BenQ America was an intended beneficiary of the indemnification contract.

BenQ America asserts that BenQ Corp. notified Forward of the pendency of the Thomson action on March 8, 2005, and that Forward notified BenQ Corp. on March 23, 2005, that it would not defend or indemnify BenQ Corp. or BenQ America in connection with the civil action or the ITC proceedings brought by Thomson. On May 30, 2005, BenQ America advised Forward that Forward was in breach of the indemnification agreement.

BenQ America then filed the present action, alleging causes of action for express contractual indemnity, equitable or implied indemnity, breach of warranty against infringement (UCC § 2-312), and declaratory relief. Forward now seeks an order dismissing the complaint for lack of personal jurisdiction. In the alternative, Forward contends that the parties agreed in a November 12, 2003, contract that any disputes arising from the sale of Forward's tuners would be resolved by the Taipei District Court, in Taipei, Taiwan, and that the complaint should be dismissed for improper venue.

## DISCUSSION

A.   Legal Standards

The court should generally decide issues relating to personal jurisdiction before examining venue. "The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum." Leroy v. Great Western United Corp., 443 U.S. 173, 180 (1979).

   1.   Dismissal for lack of personal jurisdiction.

Federal courts sitting in California may exercise personal jurisdiction over any nonresident to the extent permitted by due process. Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements, Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003) (citing Cal. Civ. P. Code § 410.10). Absent one of the traditional bases for personal jurisdiction (presence, domicile, or consent), due process requires that the defendant have sufficient minimum contacts with the forum state, and that maintenance of the suit not "offend traditional notions of fair play and substantial

3

justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

The extent to which a federal court can exercise personal jurisdiction will depend on the nature and quality of presence, or the nature and quality of the defendant's contacts with the forum state.  Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 444-45 & n.5 (1952).  If a defendant is domiciled in the forum state, or if its activities there are "substantial, continuous, and systematic," a federal court can (if permitted by the state's "long-arm" statute) exercise jurisdiction as to any cause of action, even if unrelated to the defendant's activities within the state.  Id. at 445.  This is termed "general jurisdiction."

If, however, a non-resident's contacts with the forum state are not sufficiently "continuous and systematic" for general jurisdiction, that defendant may still be subject to "specific jurisdiction" on claims related to its activities or contacts in the forum.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-76 (1985).  This "limited" or "specific" personal jurisdiction analysis involves an evaluation of the defendant's contact with the forum state, "to determine whether the 'defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.'"  Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1485 (9th Cir. 1993) (quoting Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)); see also Hanson v. Denckla, 357 U.S. 235, 253-54 (1958); Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995).

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is proper.  Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).  Where the motion is based on written materials rather than on an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).  In such cases, the court need only inquire into whether the plaintiff's pleadings and affidavits make the required prima facie showing.  Id.  Although the plaintiff cannot rest on the bare allegations of the complaint, uncontroverted allegations in the complaint must be taken as true.  Id.  Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.  Id.

### 2. Dismissals for improper venue

Parties may by contract designate a forum in which any litigation is to take place. Litigation commenced elsewhere may be subject to dismissal for improper venue. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991); see also Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996) (forum-selection clause provides basis for Rule 12(b)(3) motion to dismiss for improper venue)

Under Rule 12(b)(3), a court can consider facts outside the pleadings and need not take the pleadings as true. Thus, the court can consider reasons for denying enforcement of a forum-selection clause – e.g., fraud, undue influence, imbalance in bargaining power, or serious inconvenience in litigating in selected forum. See Argueta, 87 F.3d at 324. The court must draw all reasonable inferences and resolve all factual conflicts in favor of the party seeking to avoid enforcement of the clause, at least until an evidentiary hearing is held. Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1139-40 (9th Cir. 2004).

### B. Defendant's Motion to Dismiss

#### 1. Personal jurisdiction

Forward asserts that it is a Taiwanese corporation with no significant contacts with California, and that the court has no personal jurisdiction over it – neither general nor specific.

In opposition, BenQ America asserts that Forward has placed its products into interstate commerce in this state, engaged in affirmative acts purposefully directed at this state, advertised and marketed in this state, and established channels for providing regular products and services to customers in this state. BenQ America argues that Forward has "us[ed] California's judicial system for its own financial gain" (referring to a 2001 lawsuit seeking recovery of a $31,000 debt, filed by Forward in the Superior Court of California, County of Santa Clara, and has "admittedly [sold] products directly to California customers" (referring to Forward's admission that it sold computer keyboards and mice to a single California customer). BenQ also contends that all the jurisdictional facts are in dispute, and that it should be allowed to conduct jurisdictional discovery.

5

a.  General jurisdiction

For general jurisdiction to exist over defendants in this case, they must have engaged in "continuous and systematic general business contacts" in the forum. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984) (citing Perkins, 342 U.S. 437). "This is an exacting standard, . . . because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Schwarzenegger, 374 F.3d at 801. In considering whether it has general jurisdiction over a defendant, the court should look at all the defendant's activities that impact the state, including whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there. Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1478 (9th Cir. 1986), cited in Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).

Forward contends that BenQ America does not seriously argue that there is general jurisdiction over Forward in the present case. Notwithstanding that, Forward provides evidence that it is a Taiwanese corporation with its principle place of business in Taiwan, plus two manufacturing plants in China; that it is not incorporated in California, has not qualified to do business in California, does not have an agent for service of process in California, and has no subsidiaries incorporated or qualified to do business in California; that it engages in no business activity in California (apart from having sold computer keyboards and mice to a single customer in California); that it does not deliver products through affiliated businesses in California; that it has no branch office and does not own or occupy any real property in California; that it has no telephone listing or mailing address in California; that it has no bank account in California; that none of its officers or directors are domiciled in California and none of its board meetings have been held in California; that it has no employees in California; and that its employees do not regularly travel to California to conduct business; that it does not direct any of its advertising toward California.

In response to Forward's motion, BenQ sets forth the standards applicable to both

6

general and specific jurisdiction, though it does not differentiate between the two in discussing the merits of the motion.  However, BenQ America's arguments are focused on the factors applicable to a determination of specific jurisdiction, rather than on whether Forward has continuous and systematic general business contacts with California sufficient to establish general jurisdiction.  At the hearing, in response to a question from the court, counsel for BenQ America stated that BenQ America did not concede that general jurisdiction did not apply.  Nevertheless, he also indicated that BenQ America was "aware of nothing at this point showing systematic contacts."  The court considers this a concession that there is no general jurisdiction over Forward in this case, and finds further that the evidence provided by Forward supports its position.

          b.      Specific jurisdiction

In order to establish specific jurisdiction, a plaintiff must show 1) that the out-of-state defendant purposefully directed its activities toward residents of the forum state or otherwise established contacts with the forum state; 2) that the plaintiff's cause of action arises out of or from the defendant's forum-related contacts; and 3) that the forum's exercise of personal jurisdiction in the particular case is reasonable – that it comports with "fair play and substantial justice."  Burger King, 471 U.S. at 477-78.  If any of these three requirements is not satisfied, "jurisdiction in the forum would deprive the defendant of due process of law."  Omeluk v. Langston Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).

The first requirement is that the defendant must have purposefully directed its activities at residents of the forum, or purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of local law.  Hanson, 357 U.S. at 253-54.  "Purposeful availment" is generally applied in cases involving contract claims, while "purposeful direction" is more often used in cases involving tort claims. Schwarzenegger, 374 F.3d at 802-03.

The complaint in this action alleges a cause of action for breach of express warranty, plus a cause of action for indemnity based on an alleged written agreement.  Thus, it is more in the nature of a contract action than in the nature of a tort action, and the purposeful direction

7

"effects test" does not apply.

The purposeful availment requirement is intended to give notice to a nonresident that it is subject to suit in the forum state, thereby protecting it from being haled into local courts solely as the result of "random, fortuitous or attenuated" contacts over which it had no control. Burger King, 471 U.S. at 476. This requirement is satisfied where the defendant's forum-related contacts "proximately result from actions by the defendant itself that create a 'substantial connection' with the forum state." Id. at 477-78.

Forward argues that it has not purposefully directed its activities toward California, that it has not engaged in any significant activities in California, and that it has no substantial connection with the state. It asserts that the only contact it has with California – the sale of computer keyboards and mice to a single California customer – is unrelated to the tuners or to the claims giving rise to this action. Forward also asserts that it has not purposefully availed itself of the privilege of doing business in California.

Forward provides evidence that it did not manufacture the tuners in anticipation of sales to California. According to Forward, while it was aware generally that BenQ Corp. would incorporate the tuners into televisions, which would be sold outside of Taiwan, it had no specific knowledge that the televisions would later be sold in California or in any other particular state, and certainly never anticipated that its sale of the tuners to BenQ Corp. in Taiwan would subject it to lawsuits in California. There is no evidence that Forward sold or delivered any tuners to anyone in California, including to BenQ America, that it received any orders from residents of California for any tuners, that it advertised the tuners in California, or that it created or employed the distribution system that carried the tuners to California. The evidence shows that Forward, a Taiwanese corporation, sold the tuners to BenQ Corp. in Taiwan, and delivered the tuners to a BenQ Corp. facility located 20 minutes from Forward's manufacturing facility in Taiwan.

BenQ America argues, however, that Forward purposefully availed itself of the benefits and protections of California. BenQ America claims that Forward delivered products into the stream of commerce with the knowledge and expectation that those products would be sold

8

and used in California. BenQ America provides a declaration from one of BenQ Corp.'s marketing managers, Michael Goan, who states that he is personally familiar with the tuners purchased by BenQ Corp. from Forward. He claims that the tuner module board from Forward includes a tuner can which is specifically designed for the U.S. market based on the TV color code format and other U.S. regulatory requirements. He asserts that "it is common knowledge in the industry" that specific requirements apply to tuners to be used in products sold in the U.S.[2]

According to BenQ America, the tuners that Forward sold to BenQ Corp. were specifically designed to be incorporated into products for the U.S., and it was therefore "foreseeable" that they would be distributed by BenQ America, BenQ Corp.'s subsidiary in the U.S. Based on this, BenQ America claims that Forward should have reasonably anticipated being haled into court in California.

BenQ America also contends that Forward knowingly entered into an express indemnification contract that applied to and benefitted BenQ America.[3] BenQ America claims that Forward knew that BenQ America was an intended beneficiary of the indemnification obligation, and thus knew that its indemnity obligation could be triggered in California.

The appropriate test is not whether the tuners were designed for the U.S. market, but whether they were designed for and intended to be sold in California. Forward provides evidence that the tuners were not designed specifically for the California market, and also provides evidence that it did not sell or deliver tuners to anyone in California, including to BenQ America. Moreover, there is no evidence that Forward knew that BenQ America would

---

[2] Forward objects that paragraph 4 of the Goan Declaration lacks foundation, contains inadmissible hearsay, and constitutes impermissible lay opinion, and moves to strike it on that basis. Forward also moves on various grounds to strike paragraphs 5 and 6 of the Declaration of Grace Liaw, in-house counsel for BenQ Corp. The objections and motion to strike were filed five days after Forward's reply brief and are therefore untimely. Accordingly, the court OVERRULES the objections and DENIES the motion to strike.

[3] The court notes, however, that the agreement is between Forward and BenQ Corp., and does not mention BenQ America or make any reference to BenQ Corp's subsidiaries.

sell televisions incorporating Forward's tuners in California. At most, Forward directed the sale of its tuners "outside of Taiwan" – not specifically to California. Forward did not purposefully avail itself of the benefits and protections of California in connection with the manufacture and sale of the tuners. Thus, there is no basis for California courts to exercise jurisdiction over Forward.

The second requirement for specific jurisdiction is that the plaintiff's claim must arise out of the defendant's forum-related activities. The Ninth Circuit applies a "but-for" test to determine whether a particular claim arises out of or is related to forum-related activities. Ballard, 65 F.3d at 1500; see also Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002). Applied to the present case, the question is whether, but for defendants' contacts with California, plaintiffs' claims against defendants would have arisen.

Forward argues that BenQ America's claims do not arise out of any California-related conduct by Forward. Forward contends that where, as here, the contracts giving rise to the dispute were negotiated abroad, involved foreign companies, and required performance in a foreign country (not in the United States), BenQ America's claims cannot give rise to personal jurisdiction over Forward in California.

In opposition, BenQ America contends that its claims arise out of Forward's contacts with California, asserting that but for Forward's sale of tuners to BenQ Corp., BenQ America would never have been subjected to an infringement suit in this district by Thompson. BenQ America claims that the infringement suit relates directly to the integrated circuit chip incorporated by Forward in its tuners.

The court can find specific jurisdiction only if BenQ America's claims arise out of Forward's specific contacts with California. However, none of the specific contacts identified by BenQ America – including Forward's filing of a lawsuit to collect a $31,000 debt, and the sale of unrelated products to a single, unrelated California customer – gave rise to BenQ America's claims. As noted above, there is no evidence that Forward sold any tuners in California. The evidence shows only sales to BenQ Corp., a Taiwanese corporation, in

Taiwan.

The third requirement is that the exercise of jurisdiction by local courts must "comport with fair play and substantial justice." Burger King, 471 U.S. at 477-78. The court presumes that an otherwise valid exercise of specific jurisdiction is reasonable. Ballard, 65 F.3d at 1500. Here, however, BenQ America has not met its burden of establishing that Forward purposefully invoked the benefits and protections of California law in connection with forum-related activities that gave rise to BenQ's claims. Thus, under Ninth Circuit law, "personal jurisdiction is not established" in California. Schwarzenegger, 374 F.3d at 802 (if plaintiff fails to satisfy either of first two prongs of three-part test, plaintiff cannot establish personal jurisdiction as to that defendant).

Nevertheless, the court will briefly review the reasonableness factors, in order to underscore the extent to which the exercise of jurisdiction over Forward would not comport with fair play and substantial justice. District courts are directed to balance seven factors to determine reasonableness – 1) the extent of the defendant's purposeful availment or purposeful interjection into the forum state, 2) the burden on the defendant to litigate in the forum, 3) the extent of conflict with the defendant's sovereign state, 4) the forum's interest in hearing the dispute, 5) the most efficient means of resolving the controversy, 6) the importance to the plaintiff for convenient forum and effective relief, and 7) the existence of an alternative forum. Bancroft & Masters, 223 F.3d at 1086; see also Ballard, 65 F.3d at 1500-02.

Forward argues, first, that it has not purposefully interjected itself into California's affairs, and that all signs point to Taiwan, not California. BenQ America responds that Forward is the direct supplier of the tuners that are alleged to have infringed the Thomson patent, and that Forward specifically designed the tuners for the U.S. market and knew they would be distributed in the U.S. by BenQ America, a California corporation. This factor favors Forward, as the evidence shows that Forward has not purposefully availed itself of the privilege of conducting activities within California. To the extent that the tuners traveled from Taiwan and ended up in California, that was due to actions taken by BenQ Corp. and BenQ

America, not by Forward.

Second, Forward asserts that it would face a heavy burden defending itself in California, as it is a Taiwanese corporation with its principle place of business in Taiwan, and all its witnesses, documents, and tangible evidence are located in Taiwan. Forward contends that it would have to transport all witnesses and evidence to California for trial, and would have to incur the expense of retaining, paying, and transporting attorneys, translators, and court reporters from California to Taiwan for witness discovery.

In opposition, BenQ America argues that modern means of communication and transportation have significantly reduced the burden of litigating in another country. BenQ America also contends that since Forward has itself instituted at least one action in a California court (referring to the action for recovery of the $31,000 debt), it can "obviously" defend itself in this district.

This factor favors Forward. The witnesses with knowledge regarding the personal relationship between BenQ Corp. and Forward, and each party's performance of the contract, all work and live in Taiwan, and all documents and tangible evidence relating to this dispute are physically located in Taiwan. A foreign defendant with no connections with California and no offices or agents in the United States would be burdened by having to produce witnesses and evidence for litigation in California.

Third, Forward contends that the exercise of jurisdiction over Forward – a Taiwanese corporation with no significant contacts with California – under these circumstances would conflict with Taiwan's sovereignty. In opposition, BenQ America asserts that Forward does not suggest that California and Taiwan law are in conflict. BenQ America also contends that Forward cannot show that Taiwan has a greater interest in the resolution of this dispute, in view of the fact that the underlying patent infringement suit is pending in California. To the extent it is relevant, the court finds that this factor also favors Forward.

Fourth, Forward argues that California has no significant interest in adjudicating the dispute, and that California's only possible interest is limited to its interest in protecting one of its residents only, BenQ America. Forward notes, however, that BenQ America was not a

12

party to the sale of the tuners – rather, the sale was between Forward and BenQ Corp. Forward asserts that this is really a dispute between BenQ Corp. and Forward, not between BenQ America and Forward. In opposition, BenQ America argues that California has an interest in adjudicating this dispute because it involves a contract claim brought by one of its citizens. The court is not persuaded that California has a strong interest in BenQ America's indemnity claim. Moreover, it appears that Forward is correct in arguing that the real party in interest is BenQ Corp., which is not a California resident.

Fifth, Forward contends that the most efficient judicial resolution of this controversy would be to try the case in Taiwan, as both parties to the contract are Taiwanese companies, and all witnesses and documents are located in Taiwan. In opposition, BenQ America asserts that the Northern District of California is the most efficient venue for this indemnification action, as the underlying patent infringement action is pending in this district, and "issues of infringement" that are "integral" to the claim of indemnity will be decided here.

Efficiency of forum is evaluated by looking at where the witnesses and the evidence are likely to be located. Core-Vent Corp., 11 F.3d at 1489. The court agrees with Forward that Taiwan would be the most efficient judicial forum, because all the witnesses, documents, and other evidence are located there. In addition, the parties stipulated to dismiss the patent infringement suit that was previously pending in this district, before any substantive rulings were issued. Thus, there are no "issues of infringement" that could have any bearing on the present action.

Sixth, Forward asserts that the Northern District of California is not an essential forum for the convenient and effective resolution of this dispute. In opposition, BenQ America again asserts that because the underlying patent suit is pending in this district, this court is in a better position to assess BenQ America's claims. This factor also favors Forward, for the reasons stated above with regard to the factor of efficient judicial resolution, and that a Taiwanese court would be in a better position to evaluate a contract and a business relationship between two Taiwanese companies.

Seventh, Forward argues that Taiwan provides an adequate alternative forum.

Forward also notes that the contract between BenQ and Forward provides for resolution of disputes in Taiwan. In opposition, BenQ America contends that the existence of an alternative forum in Taiwan does not establish that this district is an unreasonable forum for this action. For the reasons stated above, the court finds that this factor favors Forward.

BenQ America argues that it should be given the opportunity to seek jurisdictional discovery into four issues: the question whether Forward knew that the tuners would end up in California, or that BenQ America was the "intended beneficiary" of the tuner sales; the possibility that the sole California customer and the debtor-defendant in the 2001 state court action simply represented "the tip of the iceberg," and that Forward might have other California contacts; the possibility that Forward might be affiliated with an entity known as Forward Electronics USA Corp.; and information regarding the percentage of Forward's overall production that is shipped to the United States.

In response, Forward contends that the request for jurisdictional discovery should be denied, and argues that the issues as to which BenQ America argues it needs discovery are "red herrings." With regard to the question whether it had any knowledge that the tuners would end up in California, Forward argues that even if it did have such knowledge, under <u>Asahi v. Superior Court</u>, 480 U.S. 102 (1987), the court cannot exercise jurisdiction over a foreign manufacturer where it is patently unreasonable. With regard to the question of the percentage of Forward's products that are shipped to California, Forward asserts that it engages in no sales-related business activity in California (other than the sale of unrelated products to the sole California customer), does not deliver products through affiliated businesses in California, and has no employees in California and no employees who regularly travel to California to conduct business.

Forward also contends that the sale of unrelated products to a single California customer, and its attempt to collect on the debt of another have no bearing on the jurisdiction in this case and thus cannot provide a basis for specific jurisdiction. With regard to the possibility of a relationship between Forward and Forward Electronics USA Corp., Forward asserts that regardless of whether there is a "potentially-related" entity or not, the other entity is

not a party to this action and its contacts with California are not binding on Forward. Forward reiterates that BenQ America's claims must arise out of Forward's forum-related activities, and notes that BenQ America does not allege any injury arising from any activity of Forward in California.

Of these four requests, all are speculative, and it appears to the court that BenQ America is simply attempting to engage in a fishing expedition. Moreover, information regarding Forward's additional California contacts, the possible affiliation with Forward Electronics USA, and the percentage of Forward's overall products that are shipped to the United States would be relevant only to the question of general jurisdiction, which BenQ America has effectively conceded – and the court finds – does not exist in this case.

The only issue as to which BenQ America seeks discovery which goes toward specific jurisdiction is Forward's knowledge of the intended destination of the tuners. But BenQ America is seeking here to obtain information regarding Forward's belief or intent with regard to something that was entirely out of its hands – the sales of the tuners by BenQ Corp. to customers outside of Taiwan. Forward manufactured and sold the tuners in Taiwan, to a Taiwanese corporation. Forward had no control over the ultimate destination of the tuners, and no input into whether BenQ Corp. shipped the tuners to California, to any of the other 49 states, or to another country such as Canada or Mexico.

## CONCLUSION

In accordance with the foregoing, the court finds that the motion to dismiss for lack of personal jurisdiction must be GRANTED. BenQ America effectively concedes that there is no general jurisdiction, and has not established that there is specific jurisdiction. BenQ America has not shown that Forward purposefully directed its activities toward California, has not shown that its claims arise out of Forward's limited forum-related activities, and has not shown that the exercise of jurisdiction in California would be reasonable. In particular, Forward did not purposefully interject itself into California affairs, and it would face a heavy burden in defending against this action in California. Moreover, the most efficient judicial resolution of this dispute would be to try the case in Taiwan, where the parties and evidence are located,

and where the tuners were manufactured and sold.

The request for jurisdictional discovery is DENIED.  BenQ America has not demonstrated how discovery it seeks will enable it to contradict the evidence provided by Forward, or will enable it to establish specific jurisdiction.  Because BenQ America has not established a "reasonable probability" that discovery would enable it to establish personal jurisdiction, it cannot show "actual and substantial prejudice" from being denied discovery. See Laub v. United States Dep't of the Interior, 342 F.3d 1080, 1093 (9th Cir. 2003).

Because the complaint is dismissed for lack of personal jurisdiction, the court finds it unnecessary to reach the question of dismissal for improper venue.

**IT IS SO ORDERED.**

Dated:  December 15, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge